The enabling legislation that created our court encourages us to sit in other parts of our circuit from time to time. The circuit, of course, is a country. She's been in this area, I think, about 12 years ago, was our last visit. And we're very appreciative of the cordial reception that Dean Kramer and the faculty and the students here at Stanford have extended to us. And happy to be here. Our first case this morning, or this afternoon, is 087013 Comer v. Department of Veterans Affairs. Mr. Wright. Thank you very much. Edwin Reines on behalf of Leroy Comer. The appeal here is from a refusal of the Court of Appeals to Veterans Claims to exercise any jurisdiction at all over Mr. Comer's claim for total disability based on unemployability for the time period February 1999 to May of 2004. And this court has jurisdiction under section 7292A because this case turns on the application of Roberson, one of the Federal Circuit's landmark precedents in the area of veterans, to the record in this case. And although this court has to be comfortable with jurisdiction, it's notable that the government isn't challenging jurisdiction in any way. The allegation below was that there was no jurisdiction because Mr. Comer had not pursued TDIU and he did not affect his appeal to the board. That's the allegation. Mr. Reines, if in fact the government does not challenge jurisdiction, do we still have jurisdiction? You mean there's no challenge to jurisdiction? Right. No. The court has to be comfortable for itself that it has appellate jurisdiction. So that's for the court to conclude. And I think on the facts here, where we have the issue of whether Roberson applies as being the hinge issue, that that's clearly within the scope under 7292 for this court, for this panel. So I don't think there's a jurisdictional problem, but you're right that the court and this panel has to decide for itself and be comfortable with itself that it has jurisdiction. So the issue as framed by the government in its brief is whether Roberson is applicable at all. Of course, Roberson held that the duty of the Veterans Administration to optimally develop the claim of the veteran requires an acknowledgement that the veteran seeking total disability based on unemployability, when there's a record of unemployability and when there's a request for as high a claim for disability as can be accomplished. And Roberson, wasn't there an indication that the veteran wanted as much disability benefit as he could get? And is that not the case here? There's no distinction that's been argued by the government or that's apparent in the record that we've been able to spy on that point. So I think in both cases, the veteran said, I want as high a rating as I can accomplish. And I think even under the practices of the Veterans Court, that's the way it's construed. These are constant requests. What's the maximum indication of a rating that he's asked for? 80%? A, O, T, and O, D? Where is there an indication that he wants TDIU? Well, the indication for TDIU is implicit in the request for the higher disability, which he's clearly asked for. In fact, in the board decision itself, that acknowledges that he's seeking in excess of 50% and for 100% schedule of disability evaluation. So the board itself acknowledged that on page 27 of the appendix. There's been no argument made, and I don't think there's a real debate, that this veteran is seeking the maximum amount of disability. He had a 21 GAF rating. There's some people that have worked in this field for many years, never seen someone that at one point was given a 21 GAF rating. It's basically completely non-functional as a human being. So I think the issue here is whether the Roberson Rule of Sympathy applies here. In other words, in optimizing what Mr. Conner was seeking here, was there an obligation to at least look whether there's TDIU, and then to review within the scope of the jurisdiction whether there's TDIU. Speaking of Rule of Sympathy, he did have representation, though, didn't he? Well, he didn't have representation in the sense of counsel. So the first exception from Roberson. He had organizational support. He had organizational aid. That's correct, Your Honor. The first exception from Rule of Roberson by the government raised is exactly the point Your Honor raises, which is the concept of an organizational aid exception. And that argument just cannot fly. That would take the entire veteran system, which is premised upon this Rule of Sympathy for veterans, that we're not going to treat them adversely, and to stand it on its head. And this is really, I think, very simply dispatched with this entire argument. In Hodge v. West, this court found the Rule of Sympathy, that's sort of one of the root seminal cases on that point. And what the court did when it went through, this was Chief Judge Michelle's opinion, went through the Veterans Judicial Review Act and those items. It said, okay, it's uniquely proclaiming and strongly proclaiming, and it stated in reviewing the legislative history that the Congress acknowledged that the way the system is at the point of that legislation, there is routinely given organizational aids. And it said, and we're not changing that. By allowing judicial review, we are not changing that. Even though they have organizational aids, the Rule of Sympathy will still apply. It's right in the legislative history. So given that Congress, when it passed the duty to assist, that's 5107A, at the time acknowledged and said, we know that they're getting these organizational aids. And these people are not lawyers. They're helping hundreds of thousands of people every day around the country. Sometimes organizational aids, no more than some lawyers, not anyone present, of course. No, no, I mean, there's no doubt that there's quality assistance that's given around the country. But what we can't make is those people pariahs. We can't have veterans who maybe have 10 percent brain function, fearful of getting aid from someone at a local agency who's willing to spend time with them to make sure they can complete the paperwork, and say, well, now you're infected and you're being treated adversely by the entire system when it's all built on a foundation of duty of sympathy towards veterans. So the organizational – There's no extra steps that he wants to adhere to himself. Virtually everything except one step. I mean, the dogged persistence by Mr. Comer, given the psychiatric problems he had, that are service-connected from his Vietnam service, are inordinate. So there's two exceptions that's argued for why Roberson's rule does not apply. That's it. One is this organizational aid exception. I think Hodge just eliminates that. That the legislation that created the rule of sympathy acknowledged that those aids were going to be given, and that wouldn't change the sympathy. The second argument, reading whoever the government is speaking to, is an appeal plea. Basically, the government argues, well, maybe when you read a claim, you read the rule of sympathy, and you imply TDIU when you're seeking unemployability – when you're demonstrating unemployability and seeking a higher rating. But not in an appeal context. In an appeal context, it's a procedurally different context, and we need to be stingier there. And that is squarely inconsistent with federal circuit law, the practice of the board, the practice of the Veterans' Appeals Court. Let me start with just this year in the McGee case, which was Judge Garris' opinion. The issue is squarely presented. It's not my opinion. It's a court's opinion. You mentioned before it was Chief Judge Rochelle. It's not his opinion. It's a court's opinion. I think we should make sure that that's the case. I will embrace that, and I appreciate that. And the court's opinion was that Roberson requires the RO and the board to fully and sympathetically develop a veteran's claim. So the argument distinguishing between the board and the RO, the regional office, just flies in the face of McGee from this year, and also the practice of the Court of Veterans' Appeals itself in Eisenbord. The exact issue is presented, which is, is TDIU implied from the predicates that are shown in Roberson? And the Veterans' Appeals Court said itself it was. So that's the way. Is this in federal circuit law? That's the law that the Veterans' Appeals Court applies itself. There's no magic words. And importantly, the rules in the F case covers this, and this is in our reply brief in 7 and 8, states that in looking at the appeal, you don't just look at one notice of appeal the way you would for a represented party in a high-stakes patent litigation or government contracts case. You look at the entire record, oral testimony, everything. And on this record, there's simply no way to conclude that he was not seeking TDIU for the period prior to 2004. Isn't the government really saying that Roberson was not applied because Roberson was very restricted to TDIU initially and not subsequently? Isn't that the essence of their argument? I think the Veterans' Court stated that the initial claim was significant, this distinction between initial claim and not initial claim, and it was relying on Norris. And Norris addressed the original Roberson case. In the original Roberson decision, they said Norris is different. And they said Norris is different because there was no debate about the initial claim in that case. Norris was about a supplemental claim that had never been dispatched with. And so what the distinction between Norris and Roberson was that in Norris, there was no issue about the initial claim. There was no argument TDIU would come out of the initial claim. The argument was that supplemental claims had these predicates for TDIU in them. And the decision was straightforward from the Veterans' Claims Court, which said those are still pending. Those are still pending until those are adjudicated. So you have TDIU claims that are live. And that set of circumstances has nothing to do with this case. We are talking about whether on appeal TDIU is present. And the board addressed all the predicates of TDIU on page 27 of the appendix. You're in your rebuttal time, so to say. Well, let me reserve the rebuttal time. But I would say that neither exception applies. Thank you very much. Thank you. Mr. Hoffman. Actually, Roberson was applied in this case by the regional office. I think as was mentioned earlier, there was never a specific claim for TDIU made by Mr. Komen. However, in reviewing the case, the regional office applied Roberson and his other regulations and awarded the TDIU claim effectively in May 2004. Upon the regional office finding that the scheduler rating that Mr. Komen was seeking, he was seeking an increase from 50 percent to 70 percent. It granted a 70 percent increase as of the examination that supports that in the May 2004 time period. And so went ahead and granted TDIU. So that's a perfect example. So the question is whether or not TDIU will win. Exactly. It's really an effective argument. And our position is that Roberson, you know, there's already a requirement in the regulation under 20.202 for the board to liberally construe claim documents, the substantive appeal documents. Is the question of when? Is there not a jurisdiction? Not precisely the question of when, Your Honor. I will answer the jurisdictional point that was raised earlier. To the extent the issue is framed as whether or not Roberson applies to these facts, we think that would be outside the court's jurisdiction. We don't understand that to be the case. We understand, in our briefs, we understood the position being argued by Mr. Komen would be simply, does Roberson apply to substantive appeal and notice of disagreement type documents? Not necessarily with respect to this case. This court doesn't have jurisdiction to find the application of Roberson in this case. It would appear to have a jurisdiction to determine the limits or extension of Roberson in general. So what would be the difference in this case? Well, frankly, in this case, there are already factual findings of record that preclude any award of a TDIU effective date prior to the one that's already been awarded. And that's simply based upon the fact that TDIU, which was Roberson-inspired in this case, was premised upon the fact that the medical evidence showed the schedule of rating was 70% as of May 2004. And as the court is aware, the TDIU regulation at 38 CFR 4.16 requires that in order for a claimant to be entitled to a TDIU award, he needs to have a schedule of rating greater than 60% for a single disability, or 70% in the case of multiple disabilities. Well, it's true that we couldn't get into that, but there's no reason why we can't get into the question whether Roberson BFF applies beyond the need of usual office. Well, that question, I mean, well, in a sense that's true, Your Honor. But what I'm pointing out to you is that on remand, Mr. Komen is not going to get an earlier effective date for TDIU. This is not going to happen. So in a sense, any opinion this court issues with respect to the extension of Roberson is advisable because of the 4.16 prohibition in this particular case. There's already been factual findings. In fact, the only other way that a TDIU award could even be considered in this case would be under 4.16B. And it's not even an award.  But there's also a finding by the board in this case at Joint Penix 27 discounting another extra scheduler rating under a different regulation, which would preclude an award under 4.16B. So in a sense that— That sort of makes the point a little bit because we didn't have the representation to claim that he should have. Well, I mean, we— The claim was left to be nullified under the age of two. So we can't necessarily presume it would be different from that. We think the claim was developed, as I mentioned. He didn't seek TDIU. He was awarded TDIU by the Veterans Department. They're the ones that granted the TDIU. So they did develop the claim, and they found a basis for awarding TDIU. The question now is, is he entitled to a TDIU award prior to the May 2004 date of the medical examination, which determines the basis for making the award? So that—you know, we think that the record has already—the factual findings of the board at Joint Penix 27 already preclude any type of granting of TDIU prior to the medical examination, upon which the decision has already been based. But, Mr. Comer, could he file a new claim at any time? Yes. Trying to bring it back in 1999? Because if he could establish his Q claim at that point, he could make it all the way back in 1999. Yeah, technically, if he were to bring a Q claim—not even technically, Your Honor, yes. A Q claim is one of the two methods available. We're going to get into it a little bit later on this afternoon with respect to the two methods. But, yes, Q is one of the methods by which a person could bring a claim and obtain an effective date back to the date of the original claim. So a very good advice? Well, see, again, that's getting to the other—we'll address it, though. There's no requirement to advise on whether you have a Q claim. You can always bring a Q claim. See, that's the sense of—since you can always bring a Q claim, there can never be any sort of prejudice resulting from somebody who wasn't awarded or informed. But directly— He has to go back and start all over again. Pardon me? And they didn't advise him on it all this time he's gone by. So the question is why shouldn't the person who advised him waive the government's ability to block him? Well, I wouldn't say that there's any waiver with respect to advising whether there's a potential Q claim. I also don't think on this record that there's any suggestion that there was a failure to advise somebody on the Q. That is the case in Malone later. But on this record, I don't see there being any question with respect to Q being even an issue. But isn't Mr. Cuomo saying that you did not advise him and he didn't have a Q claim and he could bring the right back? Mr. Malone says that in the other case. No, this was in the same—Mr. Cuomo said the same thing. They're very similar, but the argument here is simply that when they raised this earlier effectiveness TDIU claim before the Veterans Court, the Veterans Court noted that it hadn't been raised before the board, so they didn't have jurisdiction to consider that. And so the argument here today is that the board and Veterans Court erred by not extending Roberson to the substantive appeal and notice of disagreement documents so that the board would have taken a look at that. And our position— In relating it back to the 1999, at that point. So that argument is a five-year time period. Right, it is. The other case— But forget about the other case. Yeah, I know. The 1999 date— But the response to that is, you know, as a matter of regulation, the board already is required to liberally construe these documents, these substantive appeal documents. And so any further challenge to that would simply be an application of law of effect. And so that's one. And two, as we indicated earlier, the substantive appeal requirements, as we point out in our briefs, specifically require specificity. And that's different than what happens at the pre-adjudication stage, which is what Roberson was concerned with. Roberson—the language from Hodge, which is drawn from the Veterans Judicial Review Act about synthetically developing a claim to its optimum, refers to that point in time subsequently addressed by the Congress with the Veterans Claims Assistance Act and the various 5103 Notice and Assistance Requirements that involve the development of the claim itself, the development of the record, going and getting evidence, and fully developing that record and identifying all potential claims prior to making a decision. You're saying there's no obligation to tell the veteran that he could file an appeal claim. Not in this case. There's no obligation to tell the veteran— I don't see any obligation. It may be in the other case. No, no, it's in both cases. No, there's no obligation. And there's no harm because he could bring— The harm is he's going to have to elect it. It's going to be 20 years later. Well, he could have— But if he could have done that, it still would have been 20 years later. Whenever he brings the Q claim, it always goes back to that original decision. So if he's trying to challenge the original decision, I mean, it's always going to involve— However much time elapses, it's always going to involve it. But there's no requirement in this case. Certainly, in 1999, the VCAA didn't even require the notice requirements that it does today. But subsequent to the VCAA, there was no requirement to issue that type of a VCAA notice regarding Q. The VCAA notice is about a claim on appeal, not an argument that could be made upon an otherwise final decision that either is challenged or is not challenged. But isn't it the VA's burden to show and demonstrate that the VCAA notice is not present in the system? Well— Isn't it their burden to show that? If the issue is properly raised in the sense that there's a question of the VCAA notice error, at this point in time, yes, Your Honor, this court has held that to the extent the court below finds— the Veterans Court finds error, or the board finds error, that the Veterans Court cannot or must impose a burden on the Secretary to establish a lack of prejudice. Which is saying there's no error. Well, yes. That's the predicate before you get to the question of who bears the burden. There has to be an error. And there's no error here. There's no obligation. Exactly. In the VCAA— And that's your argument, that it's a misdemeanor case. Right. But in the VCAA, you have requirements about, you know, informing the claimant of what he must do to— what kind of evidence. I mean, one of the ways to look at this is the VCAA is all about— and before that, internal VA guidance was all about developing records. Acute claim doesn't involve a record. Acute claim is attacked upon an otherwise final decision. There is no evidence that's gathered with respect to acute claim. That's based upon the decision that was made at the time, the law that existed at the time, and the record that existed at the time. And so there is no development, as there would be in a regular claim situation, with respect to acute claim. And there's no notice requirement that we're aware of that imposes upon the VA a requirement upon receipt of a claim to say you might want to consider submitting an acute claim about that final decision you had 20 years earlier. That would have been saying, look this over, and if you see any plain error, which would result in reversing the decision, then you file acute claim. Well, I mean, and statute and regulations are a matter of public record as providing the right of a claimant to seek relief through the acute mechanism. But there's no requirement that we're aware of anywhere, including the VCAA, that VA has a duty upon receipt of a new claim. Because remember, what's coming in is a new claim. It's not acute claim that's being submitted, it's a new claim. And that's when the VCAA kicks in. And that's when the development of the record has to take place. And so that's the focus of the VCAA notice. And the VA errs when they don't provide notice to the veteran as to the type of evidence that they're going to provide or the type of evidence that the veteran needs to give to the VA so that they can make a decision. All of that is irrelevant to acute situation in which the record's been formed. It's been part of that final decision. The law exists. And, you know, as this Court stated, it's very specific as to how you form acute claim. I mean, Andre, as the Court said, you need to have a specific allegation of Q in order to even state a claim for Q. The only issue here is when he asked for TDIU. When did he ask for TDIU? The answer to that question is he never did. The answer to that question is that, consistent with Roberson, the regional office in July of 2004 awarded him TDIU effective May of 2004 based upon the medical examination that established that his scheduler rating exceeded the 60 percent minimum threshold under 4.16A. Once that happened, and he was potentially entitled to TDIU to the extent the record had evidence of unemployability, which this record did as of May 2004, that's a finding of fact by the board below. It can't be disturbed. And that's what our point about earlier effectiveness date. I mean, setting aside the question of was this individual adequately represented by the disabled American veterans, and we think it was. And we think that a thorough and careful review of the Veterans Judicial Review Act's legislative history points out very clearly what Congress thought of service organizations. It allowed service organizations to represent claims before the adversarial Court of Veterans Appeals. Sorry, about the sympathetic reading. Sympathetic reading has to do with the development stage. As I indicated earlier, sympathetic reading is very consistent, as it was in Hodge and in Roberson, with the development of the record. But it doesn't have a place or a role in the post-initial adjudication situation that we find ourselves in in this case. In this case, you have it. But sympathetic reading also has to do with sympathetic reading the regulations and statutes in favor of the benefit, if there's any doubt. Right. And there's all 20.202 already provides that the board's going to liberally construe these types of substantive appeal NOD documents. But we often are asked to see whether they did. It's one thing to have a very distant sense of the statute. And the Supreme Court saying it is looking to see whether the board and the… Let me respond to that from a jurisdictional angle. I don't believe this court has jurisdiction to actually determine how it was applied in a particular case. I mean, at a minimum, this court might see clarification about what the Veterans Court decision said. But this court doesn't have jurisdiction to determine whether or not the board properly applied 20.202 or some other regulation. That's for the Court of Appeals for Veterans Claims. And in this case, I would just finally note… Mr. Hockey, before I finish, would it be correct to say that we found that the Veterans Court did not properly interpret what it said, that we can review that issue and give our interpretation of what it said? For the reasons I suggested earlier with respect to the factual findings by the board, with respect to the TDIU, I think that would be an advisory appeal in this particular case. Not even a correct reading of what was advised? I think that the court should… I would recommend that the court wait for an appropriate vehicle to make that type of determination. Thank you. Judge? Thank you, Your Honor. So the parties agree that the issue on this appeal is whether appeal pleadings are read with rule of sympathy. You don't need to request TDIU. The point of Roberson is if there's unemployability shown in the record and you're asking for 70 percent or greater… Mr. Hockey said he never did ask for TDIU. He did ask for TDIU implicitly under Roberson. Roberson says the system has to treat, is required to treat, the statement that I want more than 70 percent disability and I'm unemployable. Where is that statement? TDIU. There's 29 references in the record that we have collected that are identified in our… 29 places where they talk about unemployability. But let me address the appeal. So really the rest of it's smoke. The issue is whether on appeal pleadings the Roberson rule of implicitly reading a claim for TDIU applies or not. That's all it is. The McGee case from this year says this statutory system imposed on the board an obligation to fully and sympathetically develop the veteran's claim to its optimum. That's at the board level. In Eisenbart, the Veterans Claim Court itself said nods are read liberally. Our briefs have the Lewis case, the Cervello case. Everything says appeal pleadings are read with the same rule of sympathy that applies at the RL level. So the only argument being made is wrong. And then the only thing that leaves is two things. One is the idea that you have a DAV aid and therefore you've forfeited the rule of sympathy. Hodge ends that. I don't have the time to go back through, but if you read Hodge, you'll see that there's no way the entire system flips to adversarial because people use the aids that are helping 500,000 applicants a year. The whole system is now at risk. The office says there's no way you can get a different result. And I appreciate that. You're right. That's exactly what remains. Not in their briefs because it's too fact-y to be in the briefs. The statement is the result below, if you say Robeson applies to the appeal pleadings and you say that, yes, he did appeal it and there should at least be a hearing by the Veterans Claim Court of Appeals, it's all moved because it's futile. He's going to lose. He's a loser. That's speculation. It's inappropriate fact for this court. That's what the Court of Veterans Appeals is supposed to do. They refuse to even look at whether the board had evaluated correctly. He's pointing to the board. He's saying the board decided these things. It's done. Look for a better case. This isn't your case. You should send it back to the Court of Veterans Appeals to look and say, did the board do the job or not? We're not asking you to do that. I think he's dead wrong. I think Mr. Comer is going to receive it when the facts are correctly construed and the law is correctly construed. But the point is, should he be deprived of any review at the Court of Veterans Appeals on the grounds that there's no jurisdiction because of their argument that Robeson doesn't apply to appeal pleadings when McGee and all these other cases say it absolutely is? It's that simple. Now, there's a separate thing which got a little mixed up there, which is our request for a lack of notice. There was a lack of notice. That doesn't have anything to do with TDIU. There was confusion about that. A lack of notice as to something that requires notice? Yeah. Well, I mean, that's the debate. And our position is, which we laid out, is that Mr. Robeson, one of the many things he wrote from prison and mental hospitals and everywhere else is, you've acknowledged that you were wrong when you said my illness wasn't service-connected back in 1991, 1988. You've now acknowledged that the government was wrong. I've been deprived for 15 years of benefits to which I was entitled. And you let me bang my head against the wall when I had no chance of that in my original claim, when all I needed to do was file a Q motion. And you knew that it was an unmistakable error to deny me of something that you now concede I was entitled to. And the question is, under the Act, is the government required to say, go file a Q motion. It's an unmistakable error. What you're saying is it's an unmistakable error, a Q motion. And I think it makes sense to do that. And here's why. The cost to the government of saying, go file a Q motion, these are circumstances that are tariffed, that are terror-mitting for that, is very, very low, as compared to other work that the government has to do in saying, you need to fill this element, that element, the other element. The cost is so low. And for someone like Mr. Comer, it's so beneficial to be told, you're in the wrong bucket. You need to be in the Q bucket if you want to get back to 1991. And I very much appreciate your consideration of this matter. All right. Thank you very much.